[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14654

_____

D.C. Docket No. 1:09-cv-21893-WMH

MICHAEL CHOW,
a.k.a. Mr. Chow,
MR. CHOW ENTERPRISES, LTD,
a California limited partnership,
MC MIAMI ENTERPRISES, LLC,
a Florida limited liability company, et al.,

                         Plaintiffs - Counter Defendants - Appellants,

                    versus

CHAK YAM CHAU,
PHILIPPE MIAMI, LLC,
a Florida limited liability company,
PHILIPPE WEST COAST LLC, et al.,

                         Defendants - Counter Claimants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 17, 2015)

Before MARCUS and JILL PRYOR, Circuit Judges, and RESTANI,[*] Judge.

PER CURIAM:

This appeal arises from a dispute over Chinese food.[1] Michael Chow ("Chow") is a chef who has opened a number of Chinese restaurants, all called "Mr Chow"[2] ("Mr Chow"), in Beverly Hills, New York City, and Miami Beach. Chow v. Chak Yam Chau, 555 F. App'x 842, 843-44 (11th Cir. 2014). The restaurants have distinctive menus and decors, and feature as entertainment a display of noodle-making by the staff. Id. at 844. A twenty-five-year employee of the New York Mr Chow, Philippe Chow Chau (born Chak Yam Chau), left his employment and, in December of 2005, collaborated with restaurateur Stratis Morfogen ("Morfogen") to open a Chinese restaurant called "Philippe by Philippe Chow" ("Philippe") a few blocks away from one of the New York Mr Chow restaurants. Id. New restaurants in Miami Beach and Beverly Hills, all with the same name, were subsequently opened. Id. The menus, decors, and entertainment at the Philippe restaurants are quite similar to those found at the Mr Chow restaurants. Id.

---

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

[1] This is our Court's second encounter with this litigation. In our previous, unpublished opinion, we addressed various post-trial motions not pertinent to this appeal. See Chow v. Chak Yam Chau, 555 F. App'x 842 (11th Cir. 2014).

[2] There is no period following the "Mr" in "Mr Chow."

In 2009, Chow and corporations associated with Mr Chow filed suit in the United States District Court for the Southern District of Florida against Chau, Morfogen, and other individuals and corporations associated with Philippe. Id. The plaintiffs alleged trademark, trade name, and trade dress infringement; false advertising; misappropriation of trade secrets; and unfair competition under federal, state, and common law. Id. Some defendants counterclaimed for defamation and sought to deregister Chow's trademark in "Mr Chow." Id.

Prior to trial, the district court granted summary judgment to all defendants on Chow's unfair competition claims under California Business and Professions Code §§ 17200-17210 and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201-213. Id. at 844. After trying the case on the remaining claims, but before submitting it to the jury, the district court also granted judgment as a matter of law to the defendants on Chow's trade secrets misappropriation claim, which was barred by the statute of limitations. Id. at 844-45.

The jury returned a verdict for corporate plaintiff TC Ventures, Inc., which operated the New York Mr Chow, against corporate defendant Davé 60 NYC, Inc. ("Davé 60 NYC"), which operated the New York Philippe, on the false advertising and unfair competition by deceptive conduct claims. Id. at 845. It also returned a verdict on those claims in favor of Chow, individually, against Morfogen. Id. The

3

plaintiffs prevailed on none of their remaining claims for trademark infringement, unfair competition, or conversion. The defendants received verdicts in their favor on the plaintiffs' remaining FDUTPA claim of unfair or deceptive practices. None of the defendants' counterclaims against the plaintiffs succeeded.

Following the entry of judgment, the prevailing defendants (which were all of the defendants other than Davé 60 NYC and Morfogen)[3] moved for attorney's fees under FDUTPA, as well as under New York and federal law. In its order granting attorney's fees and costs under FDUTPA, the district court noted the following "relevant facts":

> \* Plaintiff TC Ventures, Inc., obtained a jury verdict in the amount of $520,451 against Defendant Davé 60 NYC, Inc., as to claims of false advertising under the Lanham Act and common law claims of unfair competition.
>
> \* Plaintiff Michael Chow was determined to be entitled to $500,000 from Defendant Stratis Morfogen as to claims of false advertising under the Lanham Act and common law claims of unfair competition.
>
> \* No other Plaintiffs were successful in their claims against any Defendants.
>
> \* Defendants Philippe Chow, David Lee, Manny Hailey, Costin Dumitrescu, Philippe Miami LLC, and Philippe West Coast LLC were not found liable as to any Plaintiffs' claims.

---

[3] In a previous motion, prior to the first appeal to this Court, all of the defendants had moved for fees and costs. The district court denied the motion as premature, due to the anticipated appeal. Morfogen and Davé 60 NYC then filed separate motions for fees, which were both denied by the district court.

4

* Defendants who filed counterclaims were not successful.

The district court noted that, under FDUTPA, "the prevailing party, after the exhaustion of all appeals, may receive his or her reasonable attorney's fees and costs from the nonprevailing party." The plaintiffs had brought FDUTPA claims against every defendant, and all of the defendants had prevailed on those claims. The district court further noted that "Plaintiffs did not prevail on the majority of their claims and did not prevail at all as to the majority of the Defendants. Indeed, Plaintiffs only prevailed on a narrow issue: false advertising and a common law theory of unfair competition, and only as to Defendants Davé 60 NYC, Inc., and Stratis Morfogen."

Based on its view that "the major thrust of the evidence presented by Plaintiffs was as to the allegedly stolen trade secrets and the alleged infringement as to the Plaintiffs' name and style of cooking – which is at the heart of the FDUTPA claim," the district court concluded that the prevailing defendants were entitled to attorney's fees under the statute. Because it determined that the "evidence presented at trial as to false advertising [the claim on which plaintiffs prevailed] was less than one-fourth, at most, of the evidence presented, and as to the overall litigation the question of false advertising was of much less focus than the claimed trade secret theft and alleged infringement," the district court "determined that the most appropriate approach . . . is to simply reduce the

Defendants' billed hours by one-fourth." On that basis, the district court calculated that the appropriate fees award was $1,160,290.69, which represented three-quarters of Defendants' total attorney's fees of $1,547,054.25. It further awarded costs[4] totaling $182,992.12 to the prevailing defendants, which was the entire amount the prevailing defendants requested.

Plaintiffs had also moved for costs against Defendants. The district court decided that approximately 20%, or $8,000, was the appropriate amount of costs to be assessed in favor of Plaintiffs TC Ventures, Inc. and Michael Chow for their successful claims against Defendants Davé 60 NYC and Morfogen. As for Plaintiffs' costs in defending against Defendants' counterclaims, the district court decided that most of the costs incurred were unnecessary, and decided that only 10% ($8,150) of the requested award was appropriate.

Plaintiffs contest the district court's decision to award Defendants any attorney's fees and costs, contending that Defendants do not qualify under FDUTPA as the "prevailing party" in this litigation. Alternatively, even if Defendants were the prevailing party, Plaintiffs argue that the district court failed to consider the relevant equitable factors in exercising its discretion to award

---

[4] In addition to the award of taxable costs, FDUTPA allows for the award of non-taxable costs, i.e. those costs that are not taxable under federal law at 28 U.S.C. § 1920. See Fla. Stat. § 501.2105(1)-(4).

6

attorney's fees. Finally, Plaintiffs challenge the district court's calculation of the attorney's fees and costs.

After careful review, we conclude that the district court correctly decided that Defendants were entitled to attorney's fees and costs.  We do, however, correct an arithmetic error made in computing the amount of fees.

I.

"A district court's interpretation of a state statute is reviewed de novo." Mega Life & Health Ins. Co. v. Pieniozek, 516 F.3d 985, 989 (11th Cir. 2008). The decision to grant or deny attorney's fees is reviewed for abuse of discretion. Davis v. Nat'l Med. Enters., Inc., 253 F.3d 1314, 1318-19 (11th Cir. 2001). A district court's factual findings underlying its determination regarding prevailing party status is reviewed for clear error. Fireman's Fund Ins. Co. v. Tropical Shipping & Const. Co., 254 F.3d 987, 1012 (11th Cir. 2001). Whether the facts as found suffice to render a party a "prevailing party" is a legal question, which we review de novo. Id.

II.

Plaintiffs argue on appeal that because Defendants recovered nothing on their counterclaims, they cannot be said to have "prevailed" against Plaintiffs, as required by the statute. For this reason, Plaintiffs claim that the district court erred in awarding attorney's fees under FDUTPA to Defendants. We are unpersuaded.

7

A.

"Under FDUTPA, the Florida Legislature has declared that deceptive or unfair methods of competition and practices in trade and commerce are unlawful." Diamond Aircraft Indus., Inc. v. Horowitch, 107 So. 3d 362, 367 (Fla. 2013). "To encourage citizens to invoke the protections of FDUTPA and file actions under that statute, the Legislature has provided that a prevailing party in a FDUTPA action may recover reasonable costs and attorney's fees from the nonprevailing party." Id. The statutory provision reads this way: "In any civil litigation resulting from an act or practice involving a violation of this part . . . the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party." Fla. Stat. § 501.2105(1). "To recover attorney's fees, subsection 501.2105(2) provides that the attorney for the prevailing party must submit a sworn affidavit regarding the time expended litigating a civil action involving a FDUTPA claim." Diamond Aircraft, 107 So. 3d at 370. "Subsection 501.2105(3) permits an award of attorney's fees for the hours actually expended on a civil action involving a FDUTPA claim."[5] Id.

---

[5] In full, the attorney's fees section states:

(1) In any civil litigation resulting from an act or practice involving a violation of this part, except as provided in subsection (5), the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party.

8

As the Florida Supreme Court explained, "to recover attorney's fees in a FDUTPA action, a party must prevail in the litigation; meaning that the party must receive a favorable judgment from a trial court with regard to the legal action, including the exhaustion of all appeals." Id. at 368. Florida's courts have allowed a defendant to recover attorney's fees under FDUTPA even when the trial court ultimately determined that FDUTPA did not apply to the action. See id. (citing Rustic Village, Inc. v. Friedman, 417 So. 2d 305, 305-06 (Fla. Dist. Ct. App.

---

(2) The attorney for the prevailing party shall submit a sworn affidavit of his or her time spent on the case and his or her costs incurred for all the motions, hearings, and appeals to the trial judge who presided over the civil case.

(3) The trial judge may award the prevailing party the sum of reasonable costs incurred in the action plus a reasonable legal fee for the hours actually spent on the case as sworn to in an affidavit.

(4) Any award of attorney's fees or costs shall become a part of the judgment and subject to execution as the law allows.

(5) In any civil litigation initiated by the enforcing authority, the court may award to the prevailing party reasonable attorney's fees and costs if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party or if the court finds bad faith on the part of the losing party.

(6) In any administrative proceeding or other nonjudicial action initiated by an enforcing authority, the attorney for the enforcing authority may certify by sworn affidavit the number of hours and the cost thereof to the enforcing authority for the time spent in the investigation and litigation of the case plus costs reasonably incurred in the action. Payment to the enforcing authority of the sum of such costs may be made by stipulation of the parties a part of the final order or decree disposing of the matter. The affidavit shall be attached to and become a part of such order or decree.

Fla. Stat. § 501.2105.

1982). Thus, "simply because FDUTPA is ultimately held to have no application and does not provide a plaintiff with a basis for recovery after the provisions of the act have been invoked does not negate a defendant's status as a prevailing party in an action filed by a plaintiff under that act." Id. at 369 (emphasis in original). Moreover, the fees recoverable are those devoted to the entire action, not merely the FDUTPA claim, "unless the attorney's services clearly were not related in any way to establishing or defending an alleged violation of chapter 501." Id. at 370 (quoting Heindel v. Southside Chrysler-Plymouth, Inc., 476 So. 2d 266, 271 (Fla. Dist. Ct. App. 1985)) (emphasis removed); see also Mandel v. Decorator's Mart, Inc. of Deerfield Beach, 965 So. 2d 311, 314 (Fla. Dist. Ct. App. 2007) (same).

Thus, assessing attorney's fees under FDUTPA for other portions of the litigation would be inappropriate "if either (1) counsel admits that the other services provided in that action were unrelated to the FDUTPA claim, or (2) a party establishes that the services related to non-FDUTPA claims 'were clearly beyond the scope of a 501 proceeding.'" Diamond Aircraft, 107 So. 3d at 370 (quoting Heindel, 476 So. 2d at 272). In other words, "the purpose of FDUTPA's attorney's fees provision . . . is to award attorney's fees to the party that prevailed in civil litigation that involved a violation of FDUTPA – not for an action clearly beyond FDUTPA's scope." Id. at 371.

10

Once a trial court has determined that a party is a prevailing party under

FDUTPA, it then has discretion to award attorney's fees and costs after

considering various equitable factors, including:

> (1) the scope and history of the litigation;
> (2) the ability of the opposing party to satisfy an award of fees;
> (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;
> (4) the merits of the respective positions – including the degree of the opposing party's culpability or bad faith;
> (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;
> (6) whether the defense raised a defense mainly to frustrate or stall;
> (7) whether the claim brought was to resolve a significant legal question under FDUTPA law.

Humane Soc'y of Broward Cty., Inc. v. Fla. Humane Soc'y, 951 So. 2d 966, 971-

72 (Fla. Dist. Ct. App. 2007) (citing Rosen v. Rosen, 696 So. 2d 697, 700-01 (Fla.

1997)). This list is nonexhaustive. Id. at 971.

### B.

The key issue on appeal is whether the defendants are the "prevailing party"

under FDUTPA's attorney's fees provision. The Florida Supreme Court has held

that, in general, "the party prevailing on the significant issues in the litigation is the

party that should be considered the prevailing party for attorney's fees." Moritz v.

Hoyt Enters., Inc., 604 So. 2d 807, 810 (Fla. 1992); see also Prosperi v. Code, Inc.,

626 So. 2d 1360, 1363 (Fla. 1993) (courts should look to which party prevailed on

the "significant issues"). In so holding, the Florida Supreme Court has taken

11

guidance from the United States Supreme Court, which has "held that the test is whether the party 'succeeded on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" Moritz, 604 So. 2d at 809-10 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)) (internal quotation marks and brackets removed). Moritz continued: "It is our view that the fairest test to determine who is the prevailing party is to allow the trial judge to determine from the record which party has in fact prevailed on the significant issues tried before the court." Id. at 810.

The plaintiffs argue, however, that it is not enough that a FDUTPA defendant defeat a FDUTPA plaintiff on the latter's claims. Instead, they say, a defendant must also satisfy Florida's "net judgment rule" to qualify as a prevailing party. The net judgment rule emerged in the context of Florida's mechanic's lien statute, which, like FDUTPA, permits the recovery of attorney's fees by the prevailing party. See Fla. Stat. § 713.29; Prosperi, 626 So. 2d at 1362. The Florida Supreme Court explained the rule this way:

> [T]he net judgment rule comes into play when the claimant fails to foreclose a mechanic's lien but obtains a judgment for the underlying claim which exceeds any claim of the owner. As applied, the rule automatically precludes the owner from recovering attorney's fees under section 713.29. It has no relevance to an award of attorney's fees to the claimant because an unsuccessful lien claimant cannot recover attorney's fees under section 713.29.

12

Prosperi, 626 So. 2d at 1362 n.l. In other words, even if a defendant property-owner has prevailed against a plaintiff claiming a mechanic's lien, that defendant cannot recover attorney's fees if the plaintiff has recovered on some alternative theory an amount of damages that exceeds any recovery by the defendant. Plaintiffs here contend that, because they recovered against defendants Morfogen and Davé 60 NYC on some non-FDUTPA claims and because no counterclaims of any defendant succeeded, the net judgment rule should prevent Defendants from recovering any attorney's fees under FDUTPA.

As an initial matter, Plaintiffs are correct that Florida courts have cited the net judgment rule not only in the context of claims involving the mechanic's lien statute, but also concerning claims involving FDUTPA. In 1985, the First District Court of Appeals summarized the rule in the context of mechanic lien claims: "Where a defendant owner successfully defends a mechanic's lien foreclosure, but is held liable in damages for breach of contract, the defendant is not the prevailing party and is not entitled to recover attorney's fees under section 713.29." Heindel, 476 So. 2d at 270. "Although the statutory language in section 713.29 . . . , providing for attorney's fees in mechanic's lien cases, is somewhat different from that in section 501.2105, both contemplate the award of fees only to a prevailing party." Id. Under either section, "to recover attorney's fees a party must

13

(1) recover judgment on the chapter 501, part II claim, and (2) recover a net judgment in the entire case." Id.

That is, the defendant must prevail on the FDUTPA claim and satisfy the net judgment rule by not being found liable on some alternative theory for an amount greater than any counterclaim recovery it might receive. Heindel's language about a net judgment requirement in FDUTPA cases was quoted with apparent approval, although without comment, by the Florida Supreme Court in its 2013 Diamond Aircraft decision. See Diamond Aircraft, 107 So. 3d at 368. In that case, although the defendant was held to be eligible to recover attorney's fees under FDUTPA, there was no counterclaim involved as in this case. Id. at 369.

Thus, under Diamond Aircraft, a defendant who prevails on the FDUTPA claim need not assert any counterclaim to satisfy the net judgment rule. Rather, as we have stated, "by definition defendants prevail by demonstrating the inapplicability of [FDUTPA] to their actions." M.G.B. Homes, Inc. v. Ameron Homes, Inc., 30 F.3d 113, 115 (11th Cir. 1994). The question remains, however, whether a defendant who does assert a counterclaim that is unsuccessful has received a net judgment, even if the defendant successfully defends the plaintiff's FDUTPA and other claims.

The plaintiffs repeatedly emphasize the fact that defendants "did not receive a dime on their counterclaims." But they fail to cite any authority (and we can find

14

none) supporting the proposition that failure to prevail on counterclaims matters for purposes of the net judgment rule. For sure, given the kaleidoscope of possible outcomes in civil litigation involving multiple plaintiffs and defendants who assert multiple claims and counterclaims, deciding which, if any, party has prevailed for purposes of attorney's fees can be an uncertain proposition. Even so, in this case we have fairly definite guidance because the Fourth District Court of Appeals addressed a (non-FDUTPA) case with a trial outcome similar to the one here in Scutti v. Daniel E. Adache & Assocs. Architects, P.A., 515 So. 2d 1023 (Fla. Dist. Ct. App. 1987). Examining the stalemate that seemingly results when the plaintiff's claims and the defendant's counterclaims have both failed, the court stated that "[u]nder such circumstances the rule established by the cases seems to be that, where a plaintiff loses on his complaint, the defendant is the prevailing party whether he is a successful counterclaimant or not." Id. at 1024 (citing Kirou v. Oceanside Plaza Condo. Ass'n, 425 So. 2d 650 (Fla. Dist. Ct. App. 1983); McKelvey v. Kismet, Inc., 430 So. 2d 919 (Fla. Dist. Ct. App. 1983)).

Thus, in the absence of a plaintiff's success on some theory of recovery, under Florida law, the lack of success by a defendant on a counterclaim does not disqualify a defendant from "prevailing party" status in the litigation. Nor does the rationale for the net judgment rule support the plaintiffs' position that the rule should doom Defendants' chances here. The policy concern motivating the net

15

judgment rule is to prevent a defendant who is liable to a plaintiff on some theory from recovering attorney's fees simply because the plaintiff did not prevail on the specific statutory claim for which attorney's fees may be awarded – that is, a mechanic's lien or FDUTPA claim. That a defendant might itself have some unsuccessful counterclaims is irrelevant to this policy concern.

Further weighing against the plaintiffs' argument is the fact that the Florida Supreme Court has qualified the net judgment rule, making clear that it is not to be applied blindly. In Prosperi, the Florida Supreme Court's first encounter with the rule, the court disapproved of those lower court cases where "the net judgment rule appears to have been applied mechanically without regard to the equities." 626 So. 2d at 1363. The court explained:

> The fact that the claimant obtains a net judgment is a significant factor but it need not always control the determination of who should be considered the prevailing party. We hold that in considering whether to apply the net judgment rule, the trial judge must have the discretion to consider the equities and determine which party has in fact prevailed on the significant issues.

Id.

In fact, the Florida Supreme Court has more recently explained that when it took up the net judgment rule in 1987 in Prosperi, it in effect "replace[d] the 'net judgment rule' with the 'significant issues' test [and] convey[ed] this Court's preference for a flexible rule that will achieve an equitable result with respect to the determination of the 'prevailing party[.]'" Trytek v. Gale Indus., Inc., 3 So. 3d

16

1194, 1202 (Fla. 2009) (discussing attorney's fees under § 713.29). Thus, although the Florida Supreme Court's 2013 Diamond Aircraft decision cites the 1985 Florida First District Court of Appeals' Heindel decision on the applicability of the net judgment rule to FDUTPA cases, the net judgment rule – as it had been applied by the lower Florida appellate courts pre-Prosperi – had already been substantially tempered by the Florida Supreme Court's 1993 Prosperi and 2009 Trytek decisions. In citing Heindel's statement that the net judgment rule applies to FDUTPA cases, the Diamond Aircraft court was surely aware of how the rule had been qualified in Prosperi and Trytek. Indeed, Florida's appellate courts reflect that understanding. Thus, for example, the Florida Fifth District Court of Appeals has recently stated that "the prevailing party is not necessarily the party who recovers a net judgment. Instead, the prevailing party in a lien suit is that party that has prevailed on 'significant issues' in the case." GMPF Framing, LLC v. Villages at Lake Lily Assocs., LLC, 100 So. 3d 243, 244-45 (Fla. Dist. Ct. App. 2012).

Thus, recovery of attorney's fees by the defendants is not foreclosed as a matter of law, as the plaintiffs contend. It is clear that the net judgment rule, insofar as it applies to this case, does not require that an FDUTPA defendant actually file or succeed on a counterclaim. Rather, the defendant who prevails on an FDUTPA claim must simply not lose on the plaintiffs' other, non-FDUTPA claims, such that plaintiffs recover the net judgment in the case. If the defendant

17

does prevail on the FDUTPA claim and does not lose on some alternative theory in an amount exceeding its own recovery on any counterclaims, he is potentially the prevailing party and (subject to the trial court's discretion in balancing the equities) entitled to attorney's fees.

C.

Based on Florida precedent, we agree with the district court that the defendants prevailed as to the plaintiffs' claims against them. Even though their counterclaims also failed, they are the "prevailing party" for purposes of assessing attorney's fees and costs. The plaintiffs' argument that the net judgment rule prevents the defendants from recovering attorney's fees thus fails for three reasons. First, as Prosperi explained, "the net judgment rule comes into play when the claimant fails to foreclose a mechanic's lien but obtains a judgment for the underlying claim which exceeds any claim of the owner." 626 So. 2d at 1362 n.l. Heindel similarly explained that the net judgment rule applies "[w]here a defendant owner successfully defends a mechanic's lien foreclosure, but is held liable in damages for breach of contract[.]" 476 So. 2d at 270. Thus, for the net judgment rule to apply, the plaintiff must have prevailed on some other theory against the defendant. This is fatal to the plaintiffs because they did not prevail against these defendants on any alternative theory of recovery.

The plaintiffs repeatedly seek to conflate the defendants in this appeal with those other defendants – Morfogen and Davé 60 NYC – against whom they partially prevailed and who are not parties to this appeal. But that other defendants might not meet the requirements of the net judgment rule is irrelevant to these defendants' request for attorney's fees. The plaintiffs provide no reason for why the liability of Morfogen and Davé 60 NYC should be imputed to these defendants.

In the second place, because the plaintiffs recovered nothing against these defendants, they necessarily failed to obtain a judgment that exceeded what the defendants recovered, as required by the net judgment rule. So, with regard to these defendants (as opposed to Morfogen or Davé 60 NYC), we are faced with exactly the stalemate described in Scutti. In determining a prevailing party, a tie goes to the defendant who was sued and who was not found liable.

Finally, even if the failure of either party to recover any damages meant that there was no net judgment in favor of the defendants, this would only be one of several factors that the district court should consider. Plainly, a court, in this situation, retains "the discretion to consider the equities and determine which party has in fact prevailed on the significant issues." Prosperi, 626 So. 2d at 1363. Contrary to the plaintiffs' claim, the defendants directed the district court's attention to the case law – and specifically to Humane Society of Broward County

19

– setting out the relevant equitable factors to consider in exercising its discretion to determine which was the prevailing party. The district court noted that it had reviewed the arguments of the parties on the appropriateness of attorney's fees. Although it is true that the district court did not explain which of the factors it found relevant to its decision to award fees to the defendants, it did discuss the history of the litigation, and in doing so touched upon several of the relevant factors.

The trial court mentioned the length and contentiousness of the litigation, describing the case as "a relatively straightforward dispute which was aggressively litigated." It cited the "extensive discovery disputes" and "extremely adversarial posture of these parties since at least the beginning of this litigation." It noted that "by the end of the trial, Plaintiffs had abandoned their claims as to more than half of the Defendants, and either had abandoned or had judgment entered against them as to four of the original sixteen Counts brought in this case." In short, the district court described a litigation that should have been simpler, but had been drawn out and made unreasonably contentious. This indicates that the district court had considered "the scope and history of the litigation" and "the merits of the respective positions." See Humane Soc'y of Broward Cty., Inc., 951 So. 2d at 971-72.

The long and short of it is that the district court did not commit error by determining that the defendants were the prevailing party and that, given the equitable factors Florida's courts have considered, the district court did not abuse its considerable discretion.

## II.

Having decided that the district court did not err in determining that the defendants were the prevailing party, we turn to the question of whether the court correctly applied section 501.2105. Under section 501.2105(3), "[t]he trial judge may award the prevailing party the sum of reasonable costs incurred in the action plus a reasonable legal fee for the hours actually spent on the case as sworn to in an affidavit." The plaintiffs contend that the district court made an unreasonable award of attorney's fees and costs because it did not make the proper findings – namely, it did not determine that there was any "additional effort" in defending against the FDUTPA claims and it did not properly determine how many hours were billed on the FDUTPA claim. As for the latter argument, plaintiffs say that although it was the defendants' burden to produce this for the district court, the court did not hold the defendants to their burden, but instead simply estimated that three-quarters of the total fee was a fair figure.

The plaintiffs mischaracterize the record on this point. The defendants provided exhibits to support the hours worked on the case by their attorneys. As

discussed above, the fees recoverable under FDUTPA are those relating to the entire action, "unless the attorney's services clearly were not related in any way to establishing or defending an alleged violation of chapter 501." Diamond Aircraft, 107 So. 3d at 370 (quoting Heindel, 476 So. 2d at 271) (emphasis removed). It is the non-prevailing party's burden to show that "the services related to non-FDUTPA claims were clearly beyond the scope of a 501 proceeding." Id. (quotation marks removed). The district court explained that the majority of the attorney's fees were substantially related to the FDUTPA violation, and the plaintiffs have not provided any reason to conclude that the district court erred on that point. Pointing out, as plaintiffs do, that "the FDUTPA claim was only one of nineteen claims and counterclaims litigated by the parties in this case," says nothing about how much time was devoted to the various claims, the importance of each claim in the litigation, and whether some non-FDUTPA claims nonetheless fell within the scope of the FDUTPA claims.

## III.

Finally, the plaintiffs complain that the district court miscalculated the award of attorney's fees and costs by neglecting to reduce by one-fourth the sum requested by the defendants.

In their motion for attorney's fees and costs, the defendants initially calculated their total attorney's fees at $1,547,054.25. This figure, however,

22

included the hours devoted to representing non-prevailing defendants Davé 60

NYC and Morfogen. The prevailing defendants calculated that one-quarter of this

total fee was devoted to representing Davé 60 NYC and Morfogen, and thus

requested only $1,160,290.68 in fees. Notably, this figure did not distinguish

between FDUTPA-related and non-FDUTPA- related work.

Indeed, based on its review of this material and recollection of the litigation,

the district court had decided that the prevailing defendants (that is, the only parties

entitled to attorney's fees), only should have three-quarters of their attorney's fees

paid by the plaintiffs, because approximately one-fourth of their work had focused

on matters unrelated to the FDUTPA claim. As the court explained:

> Having presided over this trial and the extensive pre-trial motion practice, this Court finds that the major thrust of the evidence presented by Plaintiffs was as to the allegedly stolen trade secrets and the alleged infringement as to the Plaintiffs' name and style of cooking – which is at the heart of the FDUTPA claim. The evidence presented at trial as to false advertising was less than one-fourth, at most, of the evidence presented, and as to the overall litigation the question of false advertising was of much less focus than the claimed trade secret theft and alleged infringement. The efforts by defense counsel throughout the pretrial proceedings and at trial focused on defeating the allegations of trade secret theft as well as defending against the alleged infringement. While it may be possible to separate individual hours of billed time required to defend against the claim brought under FDUTPA from the work required to defend against the claims brought for false advertising, the Court has determined that the most appropriate approach, and the most efficient use of this Court's time, is to simply reduce the Defendants' billed hours by one-fourth.

23

In making its intended subtraction of one-fourth of the fees requested by the prevailing defendants, the district court made a mathematical error by starting with the wrong base figure. It started with the total requested attorney's fees figure of $1,547,054.25, and reduced that to $1,160,290.69. But that original figure included the work done on behalf of Morfogen and Davé 60 NYC, which should not have been included, as the latter were not prevailing defendants.[6] Thus, the starting figure should have been $1,160,290.68, which is approximately 25% less than the requested $1,547,054.25 fee. From this $1,160,290.68 figure, the court should have subtracted 25% of the fee (as being attributable to unrelated, non-FDUTPA work), which would then yield a final figure of $870,218.01 that is due to the prevailing defendants as attorney's fees. That is the figure at which the district court should have arrived according to its stated intentions and calculus.

As for the costs, the district court ordered the plaintiffs to pay the entirety of the defendants' taxable costs, which totaled $182,992.12. Because the district court intended to award the prevailing defendants the entirety of their costs, that is the correct amount.

We remand this case to the district court only for the limited purpose of issuing an amended order on fees and costs that reflect the correct calculations. Under the figures presented to us (and based on this Court's calculus), the

---

[6] The district court explicitly held that neither Davé 60 NYC nor Morfogen were entitled to fees or costs.

24

prevailing defendants are to be paid $870,218.01 in attorney's fees and $182,992.12 in costs, for a total of $1,053,210.13.

Thus, we **AFFIRM** the district court's award of attorney's fees and costs to the defendants. However, because of the mathematical error, the district court inadvertently miscalculated the fees and costs. For that reason, we **REMAND** so that the district court can enter the correct amounts in an amended judgment.

**AFFIRMED** in part; **REMANDED** in part.